1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

FERMÍN RAMOS SOBERANO,

CASE NO. C21-1084 RSM

9

Petitioner,

ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER

10

v.

11

ANDREA ARREYGUE GUILLEN,

12

Respondent.

13

14

## I.      INTRODUCTION

15

This matter is before the Court on Petitioner's Motion for Ex Parte Immediate Temporary

16

Restraining Order and Order to Show Cause.  Dkt. #7.  Petitioner filed the petition initiating this

17

matter under the Hague Convention on the Civil Aspects of International Child Abduction (the

18

"Convention")[1] and the United States' implementing statutes.  Dkt. #1 at ¶ 1.3.  The Convention,

19

"designed to discourage child abduction" and forum shopping in custody disputes, provides for

20

the return of children "wrongfully removed or retained" from their country of "habitual

21

residence."  *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014); Convention, art. 12.

22

Petitioner alleges that Respondent, the mother of his three minor children—F.R.A. age 13,

23

24

[1] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (*effective* July 1, 1988).

ORDER – 1

1    A.V.R.A. age 8, and M.R.A. age 6—, removed the children from their habitual residence in

2    Mexico in violation of his lawful custody rights.  Petitioner believes that Respondent and the

3    children are now residing within this Court's jurisdiction and seeks an order restraining

4    Respondent's ability to further interfere with his custody rights.  Respondent, despite having

5    notice of this action, has not appeared or opposed Petitioner's motion.  Based on the uncontested

6    record, the Court grants the requested relief.

7                                    **II.        BACKGROUND**

8    **A. Petitioner's Custody Proceedings in Mexico**

9              Petitioner Fermín Ramos Soberano and Respondent Andrea Arreygue Guillen were

10   previously married and lived together with their three children in Morelia, Michoacán, Mexico.

11   In 2018, Respondent filed for divorce in the First Family Orality Court of the Morelia Judicial

12   District (the "Family Court") and the Family Court entered an order requiring Petitioner to leave

13   the family home and pay Respondent temporary support for the children.  Dkt. #12 at 24; Dkt.

14   #13 at ¶¶ 6–9.  In 2019, Petitioner objected to Respondent having sole custody and raised his

15   concern that Respondent may remove the children to the United States and more specifically to

16   Washington State, where Respondent's father and two brothers lived.  Dkt. #13 at ¶ 10.  The

17   Family Court "entered an order prohibiting either parent from leaving the country" with the

18   children.  Dkt. #12 at 24–25; Dkt. #13 at ¶ 15.  Petitioner and Respondent also subsequently

19   agreed on a 50-50 custody arrangement with alternating weeks of custody and visitation on

20   Wednesdays for the week's non-custodial parent.  Dkt. #12 at 25; Dkt. #13 at ¶¶ 16–17.  The

21   resultant Family Court order approved of the plan and set out each parent's residential address

22   and required the parents to update their addresses if they moved.  Dkt. #12 at 40–41; Dkt. #13 at

23   ¶ 19; Dkt. # 23.

24

ORDER – 2

1    Despite the arrangement and lawful order, Petitioner has not seen his children since he

2    delivered them to Respondent's custody on August 2, 2020.  Dkt. #12 at 43; Dkt. #13 at ¶ 20.

3    When Petitioner realized that Respondent was not intent on returning the children to his custody,

4    he sought relief from the Family Court which required Respondent's counsel to disclose an

5    address for her.  Dkt. #12 at 55; Dkt. #13 at ¶ 26.  Respondent's counsel, Pedro Balderas

6    Hernandez, informed the Family Court that Respondent and the children were visiting 18517 –

7    36th Avenue W. Apt. E-201, Lynnwood, Washington 98037, an address that Petitioner knew as

8    the residence of Respondent's brother.  Dkt. #13 at ¶ 26.  After Respondent and the children did

9    not return from the visit, Petitioner filed a child abduction report in Mexico and the Family Court

10   subsequently found that Respondent had violated the custody agreement set forth in its order and

11   directed the U.S. Department of State, the Central Authority that administers the Convention in

12   the United States, to order Respondent's return of the children to Mexico.  Dkt. #12 at 65–67;

13   Dkt. #13 at ¶ 29.  Subsequently, the Family Court issued an arrest warrant for Respondent for

14   contempt of its court orders.  Dkt. #13 at ¶ 52.

15   **B.  Petitioner's Lack of Contact with His Children**

16       During the time that Petitioner has been deprived of his custody rights, he has not had

17   any contact with the middle child, has received one video message from the youngest child, and

18   has had sporadic text exchanges with the eldest.  *Id.* at ¶ 30.  Petitioner's limited interactions are

19   further constrained by his belief that Respondent will review his text communications, forcing

20   him to maintain overly sterile conversations to shield his children from the effects of the ongoing

21   disputes.  *Id.* at ¶¶ 34–36.  Nevertheless, Petitioner's limited communications allowed him to

22   learn that the children were living at 18517 – 36th Avenue W. Apt. H-201, Lynnwood, and he

23   was able to send Christmas presents that he knows the children received.  *Id.* at ¶ 37.

24

**C.  Petitioner's Initiation of this Action and Difficulties Effecting Service of Process**

Despite knowing addresses for two locations the children may reside, COVID delayed Petitioner's ability to pursue this action and he was unable to prepare an application for the return of his children until June 2021. *Id.* at ¶ 38. With the assistance of the U.S. Department of State, Petitioner was able to connect with local counsel and begin pursuing his case. *Id.* at ¶ 39. However, Petitioner has been unable to effect personal service of process on Respondent. Petitioner had a process server attempt to serve Respondent at her presumed residence on several occasions. *See generally* Dkt. #3. Petitioner has also attempted to reach Respondent through her brother who lives in the same apartment complex. *Id.*; *see generally* Dkt. #9. Petitioner has attempted to facilitate service by calling phone numbers associated with Respondent, by sending emails to addresses associated with Respondent, and by mailing documents to Respondent's residence and her counsel before the Family Court. *See generally* Dkt. #9. Additionally, Petitioner has sought school records to verify Respondent's contact information. Dkt. #9 at ¶ 18. Nevertheless, Petitioner was unable to serve process upon filing this action.

**D.  Petitioner's Motion for a Temporary Restraining Order**

Unable to secure Respondent's attendance at these proceedings, Petitioner elected to file a motion for an ex parte temporary restraining order ("TRO") and sought relief on a significant number of issues. Specifically, Petitioner sought an order: (1) restraining Respondent from removing the children from the jurisdiction of this Court; (2) restraining Respondent from permitting third parties to remove the children from the jurisdiction of this Court; (3) requiring daily video communications between Petitioner and his children; (4) requiring Respondent to surrender travel documents to the Court; (5) requiring Respondent to post a $25,000 bond conditioned on her compliance with the TRO; (6) requiring Respondent to show cause why final relief should not be granted in Petitioner's favor; (7) waiving any requirement for Petitioner to

post his own bond for wrongful injunction; (8) setting a scheduling conference; and (9) setting an expedited final hearing.  Dkt. #7.

### E.  Petitioner's Continued Difficulties Effecting Service

After Petitioner filed his ex parte motion for a TRO, the Court noted with concern that Respondent had not been served in the case and had not appeared.  Dkt. #11.  Additionally, the Court noted that Petitioner had not provided distinct notice of his motion for a TRO, only notice of the action in general.  *Id.*  Accordingly, the Court ordered Petitioner to make further attempts at service of process and to provide Respondent notice of his motion for a TRO.  *Id.*  Petitioner made further attempts at service through a process server, by emailing and mailing documents, and by calling Respondent, but was unsuccessful.  *See* generally Dkts. #15, #17, and #18.

### F.  Telephonic Hearing and Petitioner's Subsequent Efforts to Effect Service

On September 30, 2021, the Court held a telephonic hearing on Petitioner's motion for a TRO.  Dkt. #20.  The Court remained concerned about Petitioner's inability to effect personal service and Respondent's lack of verifiable notice of the proceedings and the motion for TRO. Accordingly, the Court deferred ruling on Petitioner's motion for a TRO and directed Petitioner to make further attempts to serve Respondent so that she could understand the seriousness of this matter.  Dkt. #21.  Petitioner again undertook attempts to personally serve Respondent through a process server[2] and provided Respondent notice of the proceedings by mail, email, and phone. *See generally* Dkt. #22.   To date, Petitioner has been unsuccessful in personally serving Respondent and Respondent has not appeared or taken part in these proceedings.

//

---

[2] The process server attempted service at Respondent's presumed residence no fewer than eight times over five days.  Dkt. #24.  On several instances the process server had reason to believe that there were people within the residence, but no one would answer the door and instead attempted to conceal their presence.  *Id.*

ORDER – 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.        DISCUSSION

**A.  Legal Standard**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction.  *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).  A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).  However, where the "balance of hardships . . . tips sharply towards the plaintiff," a plaintiff need only show "serious questions going to the merits," rather than likelihood of success on the merits, to warrant preliminary injunctive relief.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks and citation omitted).  In both scenarios, the moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

**B.  Notice to Respondent**

Where a plaintiff requests a TRO ex parte—"without written or oral notice to the adverse party or its attorney"—the court may grant the TRO

> only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  Further, this Court's local rules require that "[u]nless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all

ORDER – 6

motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion." LOCAL RULES W.D. WASH. LCR 65(b)(1).

Respondent has not been formally served, but the Court nevertheless concludes that Respondent has received adequate notice of this action and has chosen not to appear. *See generally* Dkt. #22. Petitioner has obtained the address, phone numbers, and email address which Respondent provided to the Edmonds School District, where the children attend school. Petitioner's process server has visited Respondent's residence multiple times, but no one has answered the door, despite indications that persons were within the residence. Petitioner has left phone messages and has sent text messages, emails, and postal mail to Respondent. Petitioner has contacted Respondent's brother and has provided him notice of the proceedings. In these circumstances, the Court concludes that Respondent has presumptively received notice of these proceedings and has voluntarily failed to appear.

The Court notes that this result is consistent with various other district court decisions granting ex parte motions for temporary injunctive relief in cases proceeding under the Convention. *See, e.g.*, *Brooke v. Willis*, 907 F. Supp. 57 (S.D.N.Y. 1995); *Babcock v. Babcock*, Case No. 3:20-cv-66, 2020 WL 6293445 (S.D. Iowa Aug. 24, 2020); *Galli v. Marques*, Case No. 6:21-cv-358-PGB-LRH, 2021 WL 2829018 (M.D. Fla. Mar. 5, 2021).

### C. Likelihood of Success on the Merits

The record before the Court also satisfies the Court that Petitioner has demonstrated a likelihood of success on the merits. The Court begins by noting the purpose of the Convention, which is: "a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, art. 1.

ORDER – 7

Central to accomplishing the Convention's purpose is determining whether a particular removal or retention is wrongful:

> The removal or the retention of a child is to be considered wrongful where—
>
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3.  As the Ninth Circuit has noted, a court's determination turns primarily on four questions:

> (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated by Monasky v. Taglieri*, ___ U.S. ___, 140 S. Ct. 719 (2020).

On this record—consisting of Petitioner's uncontested Petition and motion for TRO and supporting documents—Petitioner appears likely to establish, by a preponderance of the evidence, that he is entitled to relief under the Convention.  The uncontested record demonstrates that prior to removal of the children, Petitioner, Respondent, and the Family Court agreed that Petitioner and Respondent would share 50-50 custody and would reside in Mexico, the children's country of habitual residence.  Respondent's uncontested assertions likewise establish that Petitioner was exercising his custody rights immediately before Respondent wrongfully removed the children by failing to return them to Petitioner's custody under the terms of the Family Court's

ORDER – 8

order.[3]  Under circumstances such as these, the Convention generally commands that the Court "shall order the return of the child forthwith."  Convention, art. 12.

Of course, there are exceptions under which the Court need not order return.  *See Gaudin v. Remis*, 415 F.3d 1028, 1034–35 (9th Cir. 2005).  While there are indications in the record that certain exceptions may apply in this case, Respondent has not appeared to support or add context to those indications.  For example, one exception to return applies where a custodial parent "fails to petition for return within one year, and 'it is demonstrated that the child is now settled in its new environment.'"  *Flores Castro v. Hernandez Renteria*, 971 F.3d 882, 887 (9th Cir. 2020) (quoting Convention, art. 12).

In this case there appears to be some question as to whether Petitioner filed his Petition within one year of the alleged wrongful removal of the children.  *Compare* Dkt. #1 (Petition filed August 13, 2021) *with* Dkt. #12 at 43 *and* Dkt. #13 at ¶ 20 (indicating that Petitioner has not seen the children since delivering them to Respondent's custody on August 2, 2020).  But the exceptions to an order of return are affirmative defenses and a respondent asserting a defense bears the burden of proving the defense.  22 U.S.C. § 9003(e)(2) (setting forth defenses that must be proved by respondent with "clear and convincing evidence" and those that require only a "preponderance of the evidence"); *Cuellar v. Joyce*, 596 F.3d 505, 509 (9th Cir. 2010).  In Respondent's absence, the defenses appear unlikely to be supported and therefore do not diminish Petitioner's likelihood of success.

//

---

[3] *See Flores Castro v. Hernandez Renteria*, 971 F.3d 882, 887 (9th Cir. 2020) ("The archetype [wrongful removal or retention] is the refusal by the noncustodial parent to return a child at the end of an authorized visitation period.") (quoting Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,503 (Mar. 26, 1986)) (quotation marks omitted).

ORDER – 9

1

**D. Irreparable Harm**

2   Having determined that Petitioner is likely to succeed on the merits of this action, the

3 Court also concludes that Petitioner has established a likelihood of irreparable harm in the

4 absence of injunctive relief.  Importantly, Congress has explicitly found that "[t]he international

5 abduction or wrongful retention of children is harmful to their well-being."  22 U.S.C.

6 § 9001(a)(1).  Likewise, the Ninth Circuit has noted that the Convention's signatory states were

7 driven by a desire "'to protect children internationally from the harmful effects of their wrongful

8 removal or retention,' effects which are thought to follow when a child 'is taken out of the family

9 and social environment in which its life has developed.'"  *Mozes*, 239 F.3d at 1070 (citations

10 omitted).

11   There can be little doubt that if the children's wrongful removal, depriving Petitioner and

12 his children of the parent-child relationship, had an immediate and harmful effect on the children,

13 the continued wrongful retention continues to harm Petitioner and the children.  That this

14 continuing harm may require preliminary relief has been recognized by Congress which has

15 authorized courts to "take or cause to be taken measures under Federal or State law, as

16 appropriate, to protect the well-being of the child involved or to prevent the child's further

17 removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a).  To a

18 certain extent, irreparable harm is inherent in many actions under the Convention.

19   Petitioner additionally argues that Respondent is likely to flee the jurisdiction of this

20 Court to escape the Court's authority and argues that he will be irreparably harmed if Respondent

21 removes the children to an unknown location.  While Petitioner's allegations are somewhat

22 conclusory, in that there is no evidence indicating that Respondent is planning to imminently flee

23 the jurisdiction of this Court, Respondent has certainly demonstrated a willingness to violate

24 lawful court orders.  Respondent removed the children in violation of the Family Court's custody

ORDER – 10

order, has thus far refused to appear in this action, and is believed to be evading personal service. Respondent's willingness to undermine this and other legal proceedings certainly increases the possibility that she may flee again to avoid legal resolution of this dispute.

And again, this conclusion is consistent with other district courts that have considered the possibility of irreparable harm in issuing ex parte temporary restraining orders. *See, e.g.*, *Application of McCullough on Behalf of McCullough*, 4 F. Supp. 2d 411, 416 (W.D. Pa. 1998) ("Were respondent to flee this jurisdiction with the children prior to this court accomplishing a transfer of physical custody, the very purpose of the Convention and the [implementing statutes] would be defeated. This, by definition, is irreparable harm."); *Morgan v. Morgan*, 289 F. Supp. 2d 1067, 1070 (N.D. Iowa 2003) (noting that father's inability to interact with his children and the likelihood that custody and visitation rights would be further hindered in the absence of injunctive relief sufficiently established likelihood of irreparable harm). The harm is similarly noted by the Convention itself, as it "is designed to restore the 'factual' status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent." *Duarte v. Bardales*, 526 F.3d 563, 568–69 (9th Cir. 2008), *abrogated by Lozano*, 572 U.S. 1 (quoting *Feder v. Evans–Feder*, 63 F.3d 217, 221 (3d Cir.1995)) (quotation marks and citations omitted).

### E.  Balance of Equities and Public Interest

For the reasons set forth above, the Court also concludes that the balance of the equities and the public interest support Petitioner's request for a TRO. The record indicates that Respondent wrongfully removed the children in violation of Petitioner's custody rights and interfered with the custodial and parental relationship. Conversely, the nature of the conduct to be temporarily enjoined is unlikely to harm respondent. Accordingly, both the equities and the public interest favor protecting Petitioner's rights and Respondent has not argued that the

ORDER – 11

restrictions requested by Petitioner will constitute an undue burden upon her or the children. These factors therefore support granting Petitioner his requested relief.

### IV.      CONCLUSION

Having considered the Petition, Petitioner's motion for a temporary restraining order and supporting documents, and the remainder of the record, and for the reasons set forth above, the Court finds and ORDERS that:

1. Petitioner's Motion for Ex Parte Immediate Temporary Restraining Order and Order to Show Cause (Dkt. #7) is GRANTED.

2. Respondent Andrea Arreygue Guillen shall not remove F.R.A., A.V.R.A., and M.R.A. (the "children") from Snohomish County, Washington or from the jurisdiction of this Court for any purpose or reason without 72 hours prior written approval from the Court. Respondent shall immediately notify Petitioner Fermín Ramos Soberano and the Court if she changes or alters her residence or the residence of the children during the pendency of this action.

3. Respondent shall not assist or permit any third parties or persons, whether acting on her direction or authority or not, from removing or assisting in removing the children from Snohomish County, Washington or from the jurisdiction of the Court.  Likewise, third parties and persons shall not remove the children from Snohomish County, Washington or from the jurisdiction of the Court.

4. Effective on the date that Respondent receives notice of this Order, whether by email, by postal mail, or by personal service, she shall provide Petitioner daily telephone and/or video chat visits with the children for a period of not less than twenty (20) minutes per day.  Such video chat access shall be initiated by Respondent, except that F.R.A. may

communicate directly with Petitioner using his own cell phone.  Respondent shall not impose limitations on these communications.

5. Respondent shall deliver all passports, visas, or other travel documents held in her name and/or in the name of the children (both Mexican travel documents and American travel documents) to the Clerk of the Court for the United States District Court for the Western District of Washington, at Seattle, within 72 hours of receiving notice of this Order.

6. Respondent shall post a bond of no less than $25,000.00 within 72 hours of receiving notice of this Order.

   a. Respondent shall further provide Petitioner's attorney of record proof of the bond for $25,000.00 within 72 hours of the bond being posted.

   b. The posted bond shall serve as a deterrent to violations of this Order and the proceeds of the bond may be forfeited to the Petitioner if the Court determines Respondent has violated the requirements of this Order.  If forfeited, the proceeds of the bond will be used to assist Petitioner in remedying the violation, including his reasonable attorneys' fees and costs.

7. Petitioner is not required to post a bond or security for this Order due to the nature of the conduct temporarily enjoined and the fact that Respondent is unlikely to suffer any costs or damages in the event the Court determines that she was wrongfully restrained.

8. The Court hereby consolidates a hearing on the issuance of a preliminary injunction with a final evidentiary hearing on the merits of the Petition (Dkt. #1).  This hearing is scheduled to occur on Tuesday, October 26, 2021 at 9:00 a.m. at the Seattle Courthouse of the United States District Court for the Western District of Washington, 700 Stewart Street, Seattle, Washington, in Courtroom 13206.

ORDER – 13

a.  Respondent shall appear before the Court at that time and place and shall show cause why this Court should not convert this Order to a preliminary injunction or order that the children be returned to Mexico.

b.  Respondent shall appear before the Court at that time and place and shall present all evidence tending to show that the Court should not order the children returned to Mexico, including but not limited to evidence relating to the habitual residence of the children, Petitioner custodial rights, Petitioner exercise of his custodial rights, Respondent's authority to remove the children from Mexico under the Family Court's order, and such other matters as may be relevant to this matter.

9.  This Order shall remain in full force and effect for fourteen days from the date and time on which it is issued unless, before that time, the Court, for good cause shown, extends this Order for a like period or Respondent consents to a longer period.

Dated at 3:15 p.m. this 14th day of October, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 14